# In the United States Court of Federal Claims

| | |
|---|---|
| SCOTT SCHWIEGER,<br>Plaintiff,<br>and<br>BRANDON A. PLATERO et al.,<br>Plaintiff-Intervenors,<br>v.<br>THE UNITED STATES,<br>Defendant. | No. 21-2131<br>Filed August 31, 2026 |

James Renne, Renne Law, Arlington, VA, for plaintiff.
Mikael Rojas, Outen & Golden LLP, Washington, DC, for plaintiff-intervenors.
Joseph Pixley, Civil Division, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**
**Granting the government's motion for partial dismissal,**
**denying Mr. Schwieger's motion to designate interim class counsel, and**
**denying Mr. Schwieger's motion to consolidate the case with *Platero***

In August 2019, John Kluge, a military reservist and civilian employee of the federal government, sued the U.S. government in the United States District Court for the District of Columbia to recover reservist differential pay under 5 U.S.C. § 5538 (2009) and interest under the Back Pay Act, 5 U.S.C. § 5596. Mr. Kluge's complaint included allegations that there was a large class of similarly situated plaintiffs. In April 2020, plaintiff Scott Schwieger joined the suit as a second named plaintiff. The district court transferred the case to this court, where it was assigned to Judge Smith. Mr. Kluge later dismissed his complaint with prejudice, leaving Mr. Schwieger as the only remaining plaintiff.

Other military reservists who are also civilian employees of the federal government, including Brandon Platero, filed two other cases in this court. The first was filed on May 6, 2025, soon after the Supreme Court issued a decision in *Feliciano v. Department of Transportation*, 605 U.S. 38 (2025), which determined that military reservists who are also federal employees are entitled to reservist differential pay under more circumstances than the government had previously acknowledged. After consolidation of those two cases, I granted those plaintiffs class certification for a class consisting of "[a]ll federal employees who, at any time from May 6, 2019, through the present, were not paid the difference between their federal civilian salary and their military pay during their time spent in active duty." *Platero v. United States*, 180 Fed. Cl. 425, 436 (2026).

Mr. Schwieger's case—this case—was then transferred to me with motions pending. I granted the *Platero* plaintiffs' motion to intervene in the case. There are now three pending motions in this case: (1) the government moves to dismiss part of Mr. Schwieger's claim for differential pay—for the period of service from September 2009 to September 2010—as time barred, which Mr. Schwieger opposes; (2) Mr. Schwieger's counsel requests to be designated as interim class counsel for a period of time from March 11, 2009, to May 5, 2019, which the government and the *Platero* plaintiffs oppose; and (3) Mr. Schwieger moves to consolidate this case with *Platero*, which the government opposes.

For the 2009-10 mobilization, Mr. Schwieger filed suit outside the statute of limitations and cannot relate his claim back to the initial complaint Mr. Kluge filed to render that count of Mr. Schwieger's complaint timely. The court will therefore grant the government's motion for partial dismissal, dismissing Mr. Schwieger's claim for differential pay for his 2009-10 mobilization. Because Mr. Schwieger's counsel has not shown that designating him as interim class counsel

would reduce confusion and uncertainty, and because he has not demonstrated that he has experience representing class-action plaintiffs, the court will deny Mr. Schwieger's counsel's motion to be designated as interim class counsel. The court will also deny Mr. Schwieger's motion to consolidate this case with *Platero* for related reasons.

## I. Background

Mr. Schwieger was a civilian employee of the United States Department of Defense while also a commissioned officer in the United States Army Reserve. ECF No. 129 at 7 [¶21]. Mr. Schwieger was twice called to active duty under 10 U.S.C. § 12301(d), from September 28, 2009, to September 27, 2010, and from August 10, 2018, to September 13, 2019. *Id.* at 8 [¶24]; *id.* at 10 [¶32]; ECF No. 138 at 3. He alleges that, for both mobilizations, he was denied the differential pay that he was owed, in violation of 5 U.S.C. § 5538. ECF No. 129 at 8-11 [¶¶25-35].

Mr. Schwieger served two other active-duty tours during the relevant timeframe, one between 2012 and 2013, and another between 2015 and 2016. ECF No. 146-1 at 7; ECF No. 156 at 22:15-16. Those two mobilizations were under different orders not applicable in this case, but the times are relevant for purposes of tolling calculations. *See* ECF No. 156 at 26:11-15.

This case was originally filed, as a putative class action complaint, in D.C. district court as *Kluge v. United States*, No. 19-2618, on August 29, 2019. ECF No. 1. Mr. Schwieger was not a named or identified plaintiff in the original complaint. On March 31, 2020, Mr. Kluge filed a successful motion to add an additional party (ECF No. 14), and in April 2020, Mr. Kluge filed an amended class action complaint, identifying Mr. Schwieger as an additional plaintiff (ECF No. 15).

The district court then dismissed the complaint without prejudice for its lack of clarity (ECF No. 39), and Mr. Kluge and Mr. Schwieger filed a fourth amended complaint and motion to

transfer to this court in February 2021 (ECF Nos. 40, 42). The district court transferred the case to this court, and it was assigned to Judge Smith. ECF No. 52.

After a series of extensions of time and stays, Judge Smith held a status conference with the parties in October 2023. After the conference, Judge Smith issued an order lifting the then-current stay and granting Mr. Kluge's "unopposed oral motion to dismiss his claims with prejudice." ECF No. 80. Mr. Schwieger then became the lead—and only—plaintiff. *Id*. The government filed a motion to dismiss Mr. Schwieger's claim relating to his 2009-10 mobilization for lack of subject-matter jurisdiction, asserting that the claim was time barred. ECF No. 81 at 6. Mr. Schwieger voluntarily withdrew his "older differential pay claim for his deployment from 2009-10 as well as [his] class claims," leaving only the claim for his 2018-19 mobilization in the case. ECF No. 99 at 1. Judge Smith dismissed the 2009-10 and class claims without prejudice, mooting the government's partial motion to dismiss. ECF No. 100 (dismissing "plaintiff's claims incorporated in Schwieger Count One and the Class Allegations" and determining that the dismissal mooted "defendant's motion for partial dismissal, given that motion only seeks dismissal of plaintiff's now withdrawn 2009-2010 deployment claims").

In April 2025, the Supreme Court decided *Feliciano*, holding that a "civilian employee called to active duty pursuant to 'any other provision of law … during a national emergency' is entitled to differential pay." 605 U.S. at 55 (quoting 5 U.S.C. § 5538(a)). There has been a declared national emergency at all times since September 11, 2001. *See* Continuation of the National Emergency With Respect to Certain Terrorist Attacks, 90 Fed. Reg. 42695 (Aug. 29, 2025) (renewing, for the twenty-fourth year in a row, Presidential Proclamation No. 7463, which declared a national emergency on September 14, 2001); *see Feliciano*, 605 U.S. at 1294 ("With the exception of a brief period in the 1970s, one declared national emergency or another has been ongoing in this

country for many decades."). After *Feliciano*, Mr. Schwieger filed a motion to amend his complaint to "reinstate his older claim for differential pay as well as class claims." ECF No. 111 at 1. Judge Smith granted that motion (ECF No. 128) and Mr. Schwieger filed a fifth amended complaint in April 2026 (ECF No. 129). Two weeks later, Mr. Schwieger filed a motion to appoint his counsel as interim class counsel. ECF No. 137. A month later, in May 2026, the government filed a new motion to dismiss the 2009-10 mobilization claim. ECF No. 138. Four days later, the case was transferred to me. ECF No. 141.

Meanwhile, in May 2025 and July 2025, two related cases were filed in this court, *Platero v. United States* (25-782) and *Brooks v. United States* (25-1245). Both cases arose out of the Supreme Court's *Feliciano* decision, and both brought class action claims on behalf of all federal-employee-reservists who served on active duty alleging that the government violated 5 U.S.C. § 5538 when it failed to pay those individuals their reservist differential pay. *Platero*, No. 25-782, ECF No. 1 at 2-3 [¶¶7, 9]; *Brooks*, No. 25-1245, ECF No. 1 at 4-5 [¶¶10, 11]. Those cases were later consolidated (*Platero*, No. 25-782, ECF No. 18), and the plaintiffs moved to appoint their counsel as interim class counsel. After the court granted that motion (*Platero*, No. 25-782, ECF No. 33), the plaintiffs then moved to certify the class. In March 2026, this court certified the class. *Platero*, 180 Fed. Cl. at 436. In May 2026, the *Platero* plaintiffs moved to intervene in this case, and the court granted that motion. ECF No. 147.

As already noted, there are now three pending motions: (1) the government's motion to dismiss Mr. Schwieger's claim for the 2009-10 mobilization as time barred; (2) Mr. Schwieger's counsel's motion to be designated as interim class counsel for the period of time from March 11, 2009, to May 5, 2019; and (3) Mr. Schwieger's motion to consolidate this case with *Platero*.

## II. Discussion

### A. Mr. Schwieger's complaint is untimely with respect to the 2009-10 claims

The government moves for partial dismissal, relating to Mr. Schwieger's 2009-10 mobilization, under rule 12(b)(1) of the Rules of the Court of Federal Claims (RCFC). ECF No. 138. The government argues that the court lacks jurisdiction over Mr. Schwieger's claim for the 2009-10 mobilization because it is time barred. *Id.* at 8-10. In response, Mr. Schwieger presents at least six arguments, each of which, he argues, would give this court jurisdiction over his 2009-10 claim: equitable tolling (ECF No. 146-1 at 6-7), class-wide tolling (*id.* at 7-13), the relation back doctrine (*id.* at 13-14), the accrual suspension doctrine (*id.* at 15-22), administrative exhaustion (*id.* at 24), and the continuing claims doctrine (*id.* at 23-24). *See also* ECF No. 129 at 6-7 [¶¶18-20].

The jurisdiction of this court is primarily defined by the Tucker Act, which provides the court with jurisdiction over "actions pursuant to contracts with the United States, actions to recover illegal exactions of money by the United States, and actions brought pursuant to money-mandating statutes, regulations, executive orders, or constitutional provisions." *Roth v. United States*, 378 F.3d 1371, 1384 (Fed. Cir. 2004); *see* 28 U.S.C. § 1491(a)(1). The Military Pay Act, 37 U.S.C. § 204, "confers on an officer the right to the pay of the rank he was appointed to up until he is properly separated from the service." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997) (quotation marks omitted). The Military Pay Act thus "provides for suit in [the Court of Federal Claims] when the military, in violation of the Constitution, a statute, or a regulation, has denied military pay." *Antonellis v. United States*, 723 F.3d 1328, 1331 (Fed. Cir. 2013) (quotation marks omitted). This court's jurisdiction includes requests for back pay. *Worthington v. United States*, 168 F.3d 24, 27 (Fed. Cir. 1999).

A statute of limitations restricts this court's jurisdiction. *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 134 (2008) (maintaining the Supreme Court's longstanding interpretation that this court's statute of limitations is "jurisdictional"). "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. A claim accrues "when all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence." *San Carlos Apache Tribe v. United States*, 639 F.3d 1346, 1350 (Fed. Cir. 2011) (quotation marks omitted). Because section 2501's statute of limitations is jurisdictional, the Supreme Court has held that there is no equitable tolling under section 2501. *John R. Sand & Gravel*, 552 U.S. at 136; *see Kelly v. United States*, 181 F.4th 1377, 1383 (Fed. Cir. 2026) (holding that, because *John R. Sand & Gravel* addressed section 2501, courts "are bound to follow its direction that § 2501 is jurisdictional and not subject to equitable tolling"). For military pay claims, "the limitations period is established by the date of accrual, which is the date on which the service member was denied the pay to which he claims entitlement." *Martinez v. United States*, 333 F.3d 1295, 1314 (Fed. Cir. 2003) (en banc).

Under RCFC 12(b)(1), "a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). If the court determines that it lacks subject-matter jurisdiction, it must dismiss the action. RCFC 12(b)(1), (h)(3); *see Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998). The court must dismiss in part if it lacks subject-matter jurisdiction over some of the claims. *See Nicely v. United States*, 23 F.4th 1364, 1367-68 (Fed. Cir. 2022); *McDonald v. United States*, 135 F.3d 778, 1998 WL 50945, *3 (Fed. Cir. 1998) (unpublished).

### 1. The Servicemember Civil Relief Act's tolling provision would require Mr. Schwieger to have filed suit by October 11, 2019

Mr. Schwieger argues that his "statute of limitations period is actually 9 years and 14 days," not six years, because the Servicemember Civil Relief Act (SCRA), 50 U.S.C. § 3936, tolled the statute of limitations of his claim for "three years and 14 days." ECF No. 144 at 6 n.3; *see also* ECF No. 156 at 36:16-25. The SCRA has a tolling provision, which states, "The period of a servicemember's military service may not be included in computing any period ... for the bringing of any action ... by ... the servicemember." 50 U.S.C. § 526(a); *see also Cronin v. United States*, 363 F. App'x 29, 32 (Fed. Cir. 2010); *Lynch v. United States*, 135 Fed. Cl. 494, 500 & n.5 (2017). "The express terms of the [SCRA] make certain that the tolling of the statute of limitations is unconditional," and "[t]he only critical factor is military service." *Bickford v. United States*, 656 F.2d 636, 639 (1981).

Mr. Schwieger argues that his active-duty tours between April 29, 2012, and June 16, 2019 (ECF No. 138 at 9; ECF No. 82-1), tolled the statute of limitations for a total of three years and fourteen days. The government agrees that Mr. Schwieger is entitled to that amount of tolling for his active-duty tours. ECF No. 138 at 9. Any tolling for the 2009-10 active-duty tour need not be computed because that is the first tour for which he is seeking back pay. If the last date of that tour, September 27, 2010, is timely, the whole tour will be timely.

Mr. Schwieger's case was pending when *Feliciano* was decided, so he is entitled to the benefit of the *Feliciano* decision for the whole time his case has been pending, plus the full limitations period before that. *Harper v. Virginia Department of Taxation*, 509 U.S. 86, 97 (1993) ("When [the Supreme] Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate

our announcement of the rule."); *Festo Corporation v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1370 n.4 (Fed. Cir. 2003) (en banc) ("Consistent with Supreme Court precedent, the [intervening] holdings of that Court and our own … apply … to all pending litigation that has not been concluded with a final judgment, including appeals.").

Thus, Mr. Schwieger is correct (ECF No. 144 at 6 n.3) that he can receive the benefit of the Supreme Court's decision in *Feliciano*, entitling him to damages for any active-duty service for nine years and fourteen days back from when he filed his complaint, even though the Supreme Court's decision in *Feliciano* did not exist when he filed his complaint.

Mr. Schwieger's 2009-10 mobilization ended on September 27, 2010 (ECF No. 129 at 8 [¶24]; ECF No. 138 at 9), so that is the last date on which his claim for the 2009-10 mobilization accrued. Counting forward from that date determines the date on which Mr. Schwieger needed to file suit. With the six-year statute of limitations plus three years and fourteen days of tolling, added to September 27, 2010, Mr. Schwieger would have needed to file his complaint by October 11, 2019. *See* ECF No. 149 at 2 (After adding the three years and fourteen days of tolling, "Mr. Schwieger's claims for the 2009 to 2010 mobilization accrued no later than October 11, 2013. Six years from that date is October 11, 2019."); ECF No. 156 at 9:12-10:13. The timing of when his complaint was deemed filed, discussed next, will determine whether the count of Mr. Schwieger's complaint relating to his 2009-10 mobilization is timely.

### 2. Mr. Schwieger is not entitled to relate his complaint back to Mr. Kluge's original complaint

Mr. Kluge filed suit in district court on August 29, 2019. ECF No. 1. Mr. Schwieger joined the suit, at the earliest, on March 31, 2020, when Mr. Kluge filed a motion to amend his complaint to add Mr. Schwieger as a named plaintiff. ECF No. 14 at 3-4. Because the district court transferred the case to this court, no one disputes that Mr. Schwieger is entitled to the benefit of a filing date

in district court. The question is which filing date in district court applies. Mr. Schwieger's claim covering the 2009-10 mobilization is timely under SCRA tolling only if he has the benefit of relating his complaint back to Mr. Kluge's original complaint. His claim is untimely if he cannot relate back to that complaint. Mr. Schwieger's fifth amended complaint—the current one—alleges that the 2009-10 mobilization claim and the class claim are timely because they are "not only related to the same conduct, transaction, and occurrences alleged in [Mr. Kluge's original complaint (ECF No. 1)] but are, in fact, those same original allegations / claims." ECF No. 129 at 6-7 [¶19].

The relation-back doctrine arises out of this court's rule 15(c)(1)(B), which states that "[a]n amendment to a pleading relates back to the date of the original pleading when ... the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." RCFC 15(c)(1)(B). This court has developed a four-factor test to determine when an amended complaint, adding a new plaintiff, can relate back to the original complaint: the court must determine "(1) whether the new plaintiff's claim arose out of the same conduct, transaction, or occurrence as the original complaint; (2) whether the new plaintiff shares an identity of interest with the original plaintiff; (3) whether the defendant had fair notice of the new plaintiff's claim; and (4) whether the addition of the new plaintiff causes the defendant prejudice." *Holland v. United States*, 62 Fed. Cl. 395, 407 (2004) (quotation marks omitted); *see Jordan v. United States*, 179 Fed. Cl. 558, 581 (2025) (same); *Big Oak Farms, Inc v. United States*, 141 Fed. Cl. 482, 489 n.8 (2019) (explaining that while "[t]he Federal Circuit has not had occasion to rule on this four-factor test … these same factors are relied upon in other circuits including the D.C. Circuit," citing *Leachman v. Beech Aircraft Corporation*, 694 F.2d 1301, 1309 (D.C. Cir. 1982)).

**a. Class-wide tolling is not applicable in this case**

Mr. Schwieger argues that he is entitled to class-wide tolling under the standard in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974). He argues that "[f]rom the date filed, the original complaint (ECF [No.] 1) tolled the limitations period … because his claims were 'encompassed' as putative class members in Mr. Kluge's original pleading." ECF No. 146-1 at 8. But, following Supreme Court precedent, the Federal Circuit recently held "that 28 U.S.C. § 2501 is not subject to *American Pipe* tolling." *Kelly*, 181 F.4th at 1378. At the same time, the Federal Circuit in another case explained that the bar in this court against equitable tolling for class actions "is not dependent on intervening in or joining an existing suit," although that decision addressed a situation in which the plaintiff had filed a separate suit after being dismissed from the class action. *Blue Cross and Blue Shield of Kansas City Welfare Benefit Plan v. United States*, No. 24-2317, 2026 WL 2070084, at *5 (Fed. Cir. July 17, 2026) (nonprecedential).

To the extent that relation back or tolling is still available for a new plaintiff who is attempting to join an earlier class-action complaint in this court, as opposed to filing a separate suit, it is available only once the named plaintiffs have "moved for a ruling on their request for class certification"; otherwise the class action is "nothing more than a class complaint pending before the court." *Big Oak Farms*, 141 Fed. Cl. at 493. "If by simply filing a class action complaint a party could unilaterally toll the statute of limitations and then have new parties join the litigation as though the new parties were opting into a class action without any court ruling on class certification," there would be little reason for the original plaintiffs to pursue class certification. *Id.* Here, Mr. Kluge moved for class certification (ECF No. 27), but the motion was denied as moot (ECF No. 28) prior to the case being transferred to this court. And, to date, Mr. Schwieger has never moved for class certification. Thus, Mr. Schwieger cannot benefit from relation back or tolling based on any class-action claims.

**b. Mr. Kluge's dismissal of his claims rendered his original complaint a nullity, so Mr. Schwieger cannot relate his claims back**

Mr. Schwieger also seeks to relate his complaint back to Mr. Kluge's original complaint independent of any class claims. But Mr. Kluge's voluntary dismissal of his own claims in October 2023, with prejudice (ECF No. 80), undermines Mr. Schwieger's relation-back argument.

The Federal Circuit has held that when a plaintiff voluntarily dismisses his complaint, the effect "is to render the proceedings a nullity and leave the parties as if the action had never been brought." *Bonneville Associates, Limited Partnership v. Barram*, 165 F.3d 1360, 1364 (Fed. Cir. 1999) (quotation marks omitted); *see also Graves v. Principi*, 294 F.3d 1350, 1355-56 (Fed. Cir. 2002) (same); *Holloway v. United States*, 60 Fed. Cl. 254, 261 (2004) ("When an action is dismissed it is as if it never existed."), *aff'd*, 143 F. App'x 313 (Fed. Cir. 2005); *Ramona Investment Group v. United States*, 115 Fed. Cl. 704, 706 (2014) (explaining "that because a dismissal without prejudice renders the prior proceedings a legal nullity, it therefore cannot have the legal effect of starting the running of the statute of limitations"); 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2367, at 321 (4th ed. 2026) ("[A] voluntary dismissal without prejudice … leaves the situation as if the action never had been filed."). That is true whether the plaintiff has dismissed his suit with or without prejudice. *Graves*, 294 F.3d at 1355-56.

After the court granted Mr. Kluge's oral motion to dismiss his claims with prejudice in October 2023 (ECF No. 80), he was no longer a part of the case. Mr. Schwieger was the sole plaintiff. *Id*. Mr. Kluge's dismissal of his own claims rendered his complaint a nullity, up until the date Mr. Schwieger joined the suit, or at least until Mr. Kluge moved to add Mr. Schwieger to the suit in March 2020. That fact alone prevents Mr. Schwieger from receiving the benefit of relation back to Mr. Kluge's complaint.

**c. Multiple other dismissals without prejudice independently complicate any relation back for Mr. Schwieger's 2009-10 mobilization**

In February 2021, after a government motion to dismiss, the district court dismissed the complaint of Mr. Kluge and Mr. Schwieger without prejudice with leave to refile because the allegations were muddled and unclear, preventing the district court from assuring itself of its jurisdiction. ECF No. 39 at 2-4. Mr. Kluge and Mr. Schwieger then sought to transfer the case here and also refiled their complaint, also in February 2021. ECF Nos. 40, 42.

Later, when Mr. Schwieger was the sole plaintiff, the government moved to dismiss his claim relating to the 2009-10 mobilization on jurisdictional grounds. ECF No. 81. In response, Mr. Schwieger, in June 2024, filed a consent motion to "withdraw / dismiss without prejudice" his claim relating to the 2009-10 mobilization. ECF No. 99 at 1. Mr. Schwieger stated that he chose to file the consent motion in order to "isolate the [2018-19 mobilization] claim left in the case." *Id*. at 2. The court granted the motion that same month, dismissing Mr. Schwieger's claim relating to the 2009-10 mobilization without prejudice. ECF No. 100. Mr. Schwieger sought to restore the claim relating to the 2009-10 mobilization again in September 2025, which the court granted in April 2026. ECF Nos. 111, 128.

Those dismissals without prejudice each made Mr. Schwieger's position even worse, independently obstructing him from relating back to Mr. Kluge's August 2019 complaint. Thus, even if Mr. Kluge's dismissal of his complaint with prejudice had not nullified the original complaint date of August 2019, two dismissals of Mr. Schwieger's 2009-10 claim without prejudice would have had the same nullifying effect, resetting his filing date each time to a date well after October 2019. *See Bonneville*, 165 F.3d at 1364.[1]

[1] Mr. Schwieger presented contradictory arguments about which complaint the 2009-10 mobilization claim should relate back to. When Mr. Schwieger moved to amend the complaint, he asked

Although *Bonneville* and the other cases cited above do not address dismissal of one claim among others for a single plaintiff, as happened in the June 2024 voluntary dismissal without prejudice, the logic, at least in this case, applies similarly to Mr. Schwieger's situation. Relation back requires determining whether the later complaint arises out of the same "conduct, transaction, or occurrence" as the earlier complaint. RCFC 15(c)(1)(B). The two different mobilizations are different occurrences. That is why Mr. Schwieger chose to drop part of his original complaint in the first place, as one was clearly timely and the other was at least complicated. ECF No. 99 at 2. He cannot resurrect the 2009-10 claim without the new filing date having meaning. *See Big Oak Farms*, 141 Fed. Cl. at 493 (agreeing with the government that when "plaintiffs never sought class certification and when they abandoned their request for class status after the statute of limitations had expired, they relinquished their tolling claim"). His approach to this suit has at least caused significant confusion over which claims could have remained part of the suit over all that time. *See* ECF No. 39 at 2-4 (district court dismissing Mr. Kluge and Mr. Schwieger's complaint without prejudice in February 2021 and explaining that it "cannot assure itself of jurisdiction" because of the third amended "complaint's muddled nature").

Notably, in Mr. Schwieger's June 2024 consent motion to dismiss his 2009-10 claim without prejudice, Mr. Schwieger also moved to dismiss his claim related to class certification. ECF No. 99 at 1 n.1 (noting his intent to withdraw the "older differential claim and class claims"); *id.* at 2 (noting his intent to "isolate the one outstanding claim left in the case"). The court noted that Mr. Schwieger "wants to withdraw his 2009-2010 deployment claims and class allegations but

---

the court for leave to "reinstate his older claim for differential pay as well as class claims found in this case's original Transfer Complaint." ECF No. 111 at 1. That transfer complaint was dated December 2021. ECF No. 56. But when he filed his amended complaint, he asserted that his claim relates back to Mr. Kluge's original complaint, dated August 2019. ECF No. 129 at 6-7 [¶19]. Regardless, the date Mr. Schwieger asserts does not control the analysis.

maintain his 2018-2019 deployment claim." ECF No. 100 at 1. The court granted the motion with respect to the class claim as well. *Id.* Mr. Schwieger later moved to reinstate his dismissed class claim, alongside the 2009-10 mobilization claim, in 2025. ECF No. 111. The court granted the motion in April 2026 (ECF No. 128), and Mr. Schwieger filed an amended complaint that same month (ECF No. 129). But none of those actions affected Mr. Schwieger's decision earlier to dismiss the claims without prejudice, apparently giving up his earlier filing date in the process.

* * *

In sum, Mr. Schwieger cannot relate his complaint back to Mr. Kluge's August 2019 complaint, and Mr. Schwieger's complaint is untimely for purposes of the 2009-10 mobilization.

### 3. The accrual suspension doctrine does not apply in this case

In the alternative to relating his claim back to Mr. Kluge's complaint, Mr. Schwieger asserts that, under the accrual suspension doctrine, his claim did not accrue until after the Supreme Court's decision in *Feliciano* in April 2025 (ECF No. 129 at 7 [¶20]; *see id.* at 2-3 [¶6]; ECF No. 138 at 12) or after the Federal Circuit's decision in *O'Farrell v. Department of Defense*, 882 F.3d 1080 (Fed. Cir. 2018) (ECF No. 146-1 at 15). Mr. Schwieger asserts that before the Supreme Court in *Feliciano* (or the Federal Circuit in *O'Farrell*) reversed "a core statutory interpretation issue," Mr. Schwieger and other similarly situated plaintiffs could not have brought a claim for differential pay. *See* ECF No. 129 at 7 [¶20].

As this court recently discussed and decided in *Platero v. United States*, No. 25-782, 2026 WL 2263787 (Fed. Cl. July 22, 2026), an analysis the court will repeat here in large part, Mr. Schwieger, like the *Platero* plaintiffs, is not entitled to accrual suspension based on changes in the law in *Feliciano* or *O'Farrell*.

The accrual suspension rule is "distinct from the question whether equitable tolling is available under" 28 U.S.C. § 2501. *Martinez*, 333 F.3d at 1319. To my knowledge, the rule appears

only in decisions of this court and the Federal Circuit (or their predecessors).[2] And the court of appeals most often denies application of the rule. *See Young v. United States*, 529 F.3d 1380, 1385 (Fed. Cir. 2008); *Martinez*, 333 F.3d at 1319; *but see Holmes v. United States*, 657 F.3d 1303, 1322-23 (Fed. Cir. 2011) (requiring the Court of Federal Claims to apply the accrual suspension rule in the plaintiff's favor in determining when he reasonably should have known of the alleged breach of contract). That is because the rule must be "strictly and narrowly applied." *Welcker v. United States*, 752 F.2d 1577, 1580 (Fed. Cir. 1985).

According to the en banc Federal Circuit, "the accrual of a claim against the United States is suspended, for purposes of 28 U.S.C. § 2501, until the claimant knew or should have known that the claim existed." *Martinez*, 333 F.3d at 1319; *see Japanese War Notes Claimants Association of Philippines, Inc. v. United States*, 373 F.2d 356, 358-59 (Ct. Cl. 1967). Thus, a plaintiff "must either show that [the] defendant has concealed its acts with the result that [the] plaintiff was unaware of their existence or [he] must show that [his] injury was 'inherently unknowable' at the accrual date." *Japanese War Notes*, 373 F.2d at 359 (quoting *Urie v. Thompson*, 337 U.S. 163, 169 (1949)). Mr. Schwieger does not assert that the government concealed its failure to pay him the difference between his federal civilian salary and his military pay during his 2009-10 mobilization. Mr. Schwieger concedes that he knew of his missed pay at least by the time he received the last deficient paycheck for a period of active duty. ECF No. 156 at 9:12-23.

Mr. Schwieger instead argues that his injuries were inherently unknowable because binding precedent from at least 2021 to 2025, and at other earlier periods, precluded him from bringing or

---

[2] While a unique doctrine for a limitations period applicable only to this court is odd, so is the jurisdictional nature of this court's statute of limitations under *John R. Sand & Gravel*. *See United States v. Wong*, 575 U.S. 402, 409-10 (2015) (explaining that "most time bars are nonjurisdictional"); *Harrow v. Department of Defense*, 601 U.S. 480, 484 (2024).

maintaining a suit. In *Adams v. Department of Homeland Security*, 3 F.4th 1375, 1380 (Fed. Cir. 2021), the Federal Circuit held that a reservist's service needed to be connected to the declared emergency to entitle that reservist to differential pay. That decision was binding on this court and the Federal Circuit until the Supreme Court's 2025 reversal in *Feliciano*.

Mr. Schwieger also relies on *O'Farrell*, but for the opposite proposition from the *Platero* plaintiffs. The *Platero* plaintiffs argued that, before *Adams*, in the 2018 *O'Farrell* decision, the Federal Circuit had intimated, albeit primarily in the context of a different statute, that reservists "must demonstrate that their call to active duty was in support of a contingency operation." *O'Farrell*, 882 F.3d at 1086 n.5 (quotation marks omitted); *see Platero*, No. 25-782, ECF No. 65 at 17:24-18:17. They thus argued that the Federal Circuit had announced the same interpretation of the statute at least as early as 2018, which the court of appeals carried through to *Adams*, and which remained the binding interpretation until the 2025 *Feliciano* decision. Mr. Schwieger argues, on the other hand, that the Federal Circuit in *O'Farrell* held that reservists were *entitled* to their differential pay, regardless of the reason for their mobilization. ECF No. 146-1 at 5, 15-22. By implication, the Federal Circuit must have then changed its interpretation in *Adams*, before being reversed in *Feliciano*.

Mr. Schwieger adds that, before any of the Federal Circuit's decisions, the government, including the Office of Personnel Management, consistently took the position that the relief he now seeks was unavailable, or at least the government failed to provide clear guidance. ECF No. 146-1 at 16-17. Mr. Schwieger thus appears to argue that, although the facts of his case were knowable at all times, the law was unknowable, at least before *O'Farrell* in 2018, and between *Adams* in 2021 and *Feliciano* in 2025.

Regardless of which case—*O'Farrell* or *Adams*—first announced a rule limiting differential pay to only certain reservists, or whether there was the flipflopping series of precedents Mr. Schwieger alleges, the analysis is the same.

As an initial matter, Mr. Schwieger cites no binding authority indicating that the accrual suspension rule applies to changes in law, as opposed to unknowable facts. Although this court applied the rule to changes in law in *Ciapessoni v. United States*, 129 Fed. Cl. 332, 335 (2016); *Boyajian v. United States*, 129 Fed. Cl. 336, 340 (2016); and *Petro-Hunt, LLC v. United States*, 90 Fed. Cl. 51, 62-63 (2009), *aff'd on other grounds*, 862 F.3d 1370, 1378-79 (Fed. Cir. 2017), courts generally do not suspend accrual of statutes of limitations for changes in law. *See Catawba Indian Tribe of South Carolina v. United States*, 982 F.2d 1564, 1572 (Fed. Cir. 1993) (declining to apply the accrual suspension rule where "all the relevant *facts* were known. It was the meaning of the law that was misunderstood."); *cf. Boling v. United States*, 220 F.3d 1365, 1374 (Fed. Cir. 2000) (addressing equitable tolling—not accrual suspension—and holding that, even though there was an earlier binding decision that "effectively barred the cause of action," "the plaintiffs point[ed] to no authority which would suggest that the presence of adverse precedent automatically leads to equitable tolling," and the plaintiffs could not toll the statute of limitations); *but cf. Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250, 257-58 & nn.3-4 (2016) (denying equitable tolling to the Menominee Tribe but declining to decide whether equitable tolling—not accrual suspension—could apply based on a party's "relying on *actually binding* precedent that is subsequently reversed").[3]

[3] *Boling* and *Menominee Indian Tribe* both concerned equitable tolling rather than accrual suspension. The standard for equitable tolling—which requires that a plaintiff show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing," *Menominee Indian Tribe*, 577 U.S. at 255—appears to be more forgiving

In fact, applying the accrual suspension rule to changes in law can lead to unreasonable results. The differential-pay statute at issue was enacted in 2009. If the statute were much older, say, dating back to the 1970s instead of 2009, under Mr. Schwieger's theory the accrual suspension rule would still allow damages for periods of service dating back that far. But this court's statute of limitations is designed "to achieve a broader system-related goal, such as facilitating the administration of claims, limiting the scope of a governmental waiver of sovereign immunity, or promoting judicial efficiency." *John R. Sand & Gravel*, 552 U.S. at 133 (citations omitted); *see Hart v. United States*, 910 F.2d 815, 818 (Fed. Cir. 1990) (categorizing section 2501 "as a statute of repose"). Applying the rule to changes in law and thus allowing it to reach so far back in time could undermine those purposes.

But even assuming accrual suspension can apply to a situation in which a plaintiff had no right to bring suit under adverse precedent, such as *Ciapessoni*, 129 Fed. Cl. at 335, this is not such a case. Service members were bringing the same differential pay claims before the Supreme Court's decision in *Feliciano*. Before the 2021 *Adams* decision, some service members even succeeded in convincing administrative bodies that the service members had the correct interpretation of the statute. *See Marchand v. Government Accountability Office*, No. 12-GA-05 VT, 2012 WL 8020671, at *3 (C.A.O.C. Dec. 27, 2012) (Congressional Accountability Office of Compliance explaining that reservists were entitled to differential pay under 5 U.S.C. § 5538(a) and concluding that "Congress' intent is clear" that it meant to extend benefits to reservists ordered to active duty under "any other provision of law" during a national emergency (quotation marks omitted)); *Marquiz v. Department of Defense*, No. SF-4324-15-0099-I-1, 2015 MSPB LEXIS 2138, at *6-7, *12-

---

than the standard for accrual suspension, which must be "strictly and narrowly applied," *Martinez*, 333 F.3d at 1319.

13 (M.S.P.B. Mar. 12, 2015), *aff'd*, 123 M.S.P.R 479, 480 (2016) (nonprecedential) (ordering agency to pay a petitioner who was called or ordered to active duty and served during a national emergency); *Miller v. Department of Treasury*, No. CH-3330-16-0518-I-1, 2016 MSPB LEXIS 6318, at *7-9 (M.S.P.B. Oct. 24, 2016) (same); *Doe v. Department of State*, No. NY-4324-15-0127-I-2, 2016 MSPB LEXIS 5987, at *6-7 (M.S.P.B. Oct. 6, 2016) (holding that the petitioner was entitled to differential pay when he was "ordered to active duty … during a declared national emergency"). And, according to Mr. Schwieger's own theory, the Federal Circuit had held at least as of 2018 that the service members had the correct interpretation of the statute. ECF No. 146-1 at 15-22.

A claim is "not inherently unknowable" if "other [plaintiffs] brought suit" before the later change in law. *Ram Energy, Inc. v. United States*, 94 Fed. Cl. 406, 412 (2010); *see Jordan*, 179 Fed. Cl. at 587-88 ("Plaintiffs do not articulate why it was possible for Mr. Lambro to know of his rights and file suit yet impossible for Plaintiffs here to know of their own rights, or, similarly, for the plaintiffs in other cases in this Court that are completely unrelated to this litigation to raise similar claims."); *Communications Vending Corp. of Arizona v. Federal Communications Commission*, 365 F.3d 1064, 1075 (D.C. Cir. 2004) (explaining that a litigant "cannot toll or suspend the running of the statute [of limitations] by relying upon the uncertainties of controlling law. It is incumbent upon him to test his right and remedy in the available forums." (quotation marks omitted, quoting *Fiesel v. Board of Education of City of New York*, 675 F.2d 522, 524-25 (2d Cir. 1982))); *see also Entines v. United States*, 39 Fed. Cl. 673, 681 (1997) (reasoning that because other similarly situated litigants brought the same claims "in the 1970s and 1980s," plaintiffs' allegations that their claims were "inherently unknowable" were "fatally undermine[d]"), *aff'd*, 185 F.3d 881 (Fed. Cir. 1999). Here, Mr. Schwieger, Mr. Feliciano, and other service members

brought or maintained their suits, both before and after the Federal Circuit's decision in *Adams* and before and after the Federal Circuit's decision in *O'Farrell*. Mr. Schwieger's claim was not inherently unknowable.

Although some parties successfully received the differential pay that Mr. Schwieger here seeks (*see e.g.*, *Doe*, 2016 MSPB LEXIS 5987), Mr. Schwieger relies on the fact that the government consistently took the same position, both in litigation and under guidance from the Office of Personnel Management, until the Supreme Court reversed *Adams* in *Feliciano*. ECF No. 146-1 at 19-22. But a consistent position by the government, absent binding authority to the contrary, should be the norm; it does not warrant the strict and narrow application of the accrual suspension rule.

**4. The pursuit of administrative remedies does not toll the statute of limitations**

Although Mr. Schwieger does not raise the argument directly, he alludes to an argument that his pursuit of administrative remedies could separately toll the statute of limitations, giving him a distinct way to make his claim for the 2009-10 service timely. ECF No. 146-1 at 23-24 (arguing that Mr. Schwieger first sought relief from the Office of Personnel Management and waited for its decision before filing suit here). But exhaustion of administrative remedies is "not a mandatory prerequisite" to bringing a suit in this court. *Martinez*, 333 F.3d at 1304. Thus, as the en banc Federal Circuit held, "Congress did not authorize postponement of the running of the limitations period while optional administrative remedies were being exhausted." *Id.* at 1306. Mr. Schwieger's 2009-10 mobilization claim was not tolled while he pursued administrative remedies.

**5. The continuing claims doctrine does not save untimely claims**

Mr. Schwieger finally argues that the continuing claims doctrine applies, which would suspend the accrual of his claims. ECF No. 146-1 at 23. "The continuing claims doctrine often operates to save parties who have pled a series of distinct events—each of which gives rise to a separate cause of action—as a single continuing event. In such cases, the continuing claims doctrine operates to save later arising claims even if the statute of limitations has lapsed for earlier events." *Ariadne Financial Services Pty. Ltd. v. United States*, 133 F.3d 874, 879 (Fed. Cir. 1998). But that doctrine does not save the time-barred events; it applies to save a plaintiff's claim relating to an event that occurred within the statute of limitations, even if the first related claim accrued earlier. For example, the continuing claims doctrine applied when an employer made repeated incorrect deductions from an employee's monthly pay, because each deduction was one of "a series of independent and distinct wrongs or events … each … having its own associated damages." *Wells v. United States*, 420 F.3d 1343, 1347 (Fed. Cir. 2005). In that case, the earlier time-barred paychecks did not undermine the timeliness of the later non-time-barred paychecks. *Id.* As applied here, Mr. Schwieger's claim for his 2018-19 mobilization is not barred simply because his claim for his 2009-10 mobilization is barred. But the continuing claims doctrine does nothing to render Mr. Schwieger's suit for the 2009-10 mobilization timely.

**B. Mr. Schwieger's counsel will not be designated as interim class counsel**

Mr. Schwieger's counsel seeks to be designated as interim class counsel for a putative class that addresses the same legal issue as *Platero* but covers a period that is earlier than the *Platero* class period. ECF No. 137 at 3-4. Because the *Platero* class includes all claims from May 6, 2019, to the present, Mr. Schwieger's counsel seeks to represent a group of claims from March 11, 2009, to May 5, 2019. *Id.* at 3 (mostly providing May 5, 2019, as the end date; once erroneously providing May 5, 2009, as the end date; and elsewhere, at page 8, erroneously providing May 4, 2019 as

the end date; but indicating that the intent is to end just before the *Platero* class's start date). He argues that granting his motion "simply maintains the status quo protecting the interests of all parties and putative class members." *Id.* at 4.

The court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." RCFC 23(g)(3). Designating interim class counsel "clarifies responsibility for protecting the interests of the class during precertification activities." *Buonasera v. Honest Company, Inc.*, 318 F.R.D. 17, 18 (S.D.N.Y. 2016) (quoting Manual for Complex Litigation (Fourth) § 21.11 (2004) on Fed. R. Civ. P. 23(g)(3), which mirrors the language of RCFC 23(g)(3), marks omitted).

When ultimately appointing class counsel, the courts consider four factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." RCFC 23(g)(1)(A). Courts examine the same four factors when designating interim class counsel. *In re Vanguard Chester Funds Litigation*, 625 F. Supp. 3d 362, 365 (E.D. Pa. 2022). Both class counsel and interim class counsel must be able "to fairly and adequately represent the interests of the class" (RCFC 23(g)(1)(B)), and those four factors effectively show whether counsel can fairly and adequately represent the interests of the class.

Here, designating another attorney as class counsel—interim or final—when Mr. Platero's attorneys have already been designated as class counsel for the same alleged injury, for a different time period, would only add to confusion and would not benefit potential plaintiffs. There are at least three reasons the designation would add to confusion. First, Mr. Schwieger's proposed class would include plaintiffs who would also be included in the *Platero* class. Those plaintiffs could

then join two different class-action suits, represented by different attorneys, who might have different or conflicting advice for the plaintiffs. Second, and relatedly, *Platero* covers some claims that begin before May 6, 2019, as some of the *Platero* class members, like Mr. Schwieger, have a mobilization that is subject to SCRA tolling. That adds to the potential confusion over which claims belong in which class action. Third, Mr. Schwieger's counsel has not handled a class action before, making the logistics unnecessarily complicated.

**1. Two separate class periods are confusing for potential class members**

Mr. Schwieger's attorney is seeking to represent a class covering claims during the period of March 11, 2009, through May 5, 2019. ECF No. 137 at 8. He argues that Mr. Schwieger's "two claims for [the] 2009-10 and 2018-19 deployments perfectly bookend" the certified class in *Platero*, 180 Fed. Cl. at 436. ECF No. 137 at 6. Mr. Schwieger's counsel therefore argues that the two classes would not represent "the same people" and would not cause confusion. ECF No. 144 at 2. But, as the court previously stated (ECF No. 147 at 4-5), if both *Platero* and *Schwieger* had certified classes, the two cases would have to represent some of the same people, those whose claims straddle the two different time periods. The intervenors, in their class, have already "identified at least two Class members with claims that cover time periods before and after May 6, 2019." ECF No. 150 at 3. Potential class members would receive notices from two different plaintiffs' counsels, who would likely make different arguments, and the process is likely to lead to more confusion than benefit.

Further, as the government points out (ECF No. 139 at 3), courts generally decline to grant class certification where it has been granted in a similar action. *See Becker v. Schenley Industries, Inc.*, 557 F.2d 346, 348 (2d Cir. 1977) (affirming the "district court's determination not to permit duplicative class actions, to avoid undue burdens on the parties and on judicial resources, and to

eliminate the possibility of inconsistent results”). That is consistent with the Supreme Court’s general principle that “[a]s between federal district courts, … though no precise rule has evolved, the general principle is to avoid duplicative litigation.” *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976). While neither of those cases involved the same issue but during separate periods of time like this case, two competing class actions with overlapping individual plaintiffs present similar complications.

One of the goals of a class action is to promote judicial efficiency. *See, e.g.*, *General Telephone Company of Southwest v. Falcon*, 457 U.S. 147, 155 (1982) (“[T]he class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23.” (quotation marks omitted)); *American Pipe*, 414 U.S. at 553 (reasoning that the “principal purpose” of class actions is to promote the “efficiency and economy of litigation”); *Oztimurlenk v. United States*, 162 Fed. Cl. 658, 690-91 (2022). A class action “is basically a procedural technique for resolving claims of many individuals at one time.” *Quinault Allottee Association & Individual Allottees v. United States*, 197 Ct. Cl. 134, 137 (1972).

Here, where the court has already certified class counsel in *Platero*, 180 Fed. Cl. at 436, separately certifying Mr. Schwieger’s counsel would undermine the goal of judicial efficiency. Mr. Schwieger’s counsel argues that denying his motion to designate himself as class counsel will cause “conflicting or differing rulings causing confusion and unnecessary delays.” ECF No. 137 at 4. But both suits raise identical issues, and they are more efficiently resolved with only a single class action.

### 2. SCRA tolling is contemplated by the *Platero* class

This court is equally unpersuaded that Mr. Schwieger “has a superior class claim due to relation back to this case’s original filing.” ECF No. 144 at 4. As discussed earlier, Mr. Schwieger

cannot relate back to Mr. Kluge's original filing in the case. His filing date for his 2018-19 mobilization appears to be February 2021, although his class claims may be entitled to a filing date of only September 2025 or April 2026, when he resurrected those. *See supra* part II.A.2.c. He is individually entitled to three years and fourteen days of tolling under the SCRA. *See supra* part II.A.1. But he has not argued that his SCRA tolling could somehow transfer to other potential plaintiffs. Further, each potential class member in *Platero* also stands to benefit from his or her own SCRA tolling and therefore might be able to claim, in *Platero*, dates before May 6, 2019. *Platero*, 2026 WL 2263787 at *2, *5.

Regarding Mr. Schwieger's earlier filing date of March 2020, to the extent that date is available after Mr. Schwieger's complaint was dismissed without prejudice, and his class claims were dismissed without prejudice a second time (*see supra* part II.A.2.c), any benefit from that earlier filing date is outweighed by the complications of multiple separate classes. Any potential "class expansion" that Mr. Schwieger's earlier-filed complaint could create (ECF No. 144 at 5) does not outweigh the harms of having multiple classes addressing the same legal issue.

**3. Counsel for Mr. Schwieger is not in a position to litigate a class action**

Even if Mr. Schwieger's putative class would not cause unwarranted confusion based on the *Platero* class, the court has significant reservations about whether counsel for Mr. Schwieger is able to "fairly and adequately represent the interests of the class." RCFC 23(g)(1)(B). For the first and fourth factors under RCFC 23(g)(1)(A), relating to the work counsel has done in identifying potential claims and the resources he will commit, Mr. Schwieger's counsel represents that he has "spent thousands of hours … interviewing and researching potential class members." ECF No. 137 at 7; *see also* ECF No. 137-1 at 2 [¶5]. But after that time, he has not sought to join any other plaintiffs to his suit or named any other potential plaintiffs.

Regarding the second, third, and fourth factors, involving counsel's experience in handling class actions, knowledge of the applicable law, and resources he will commit, Mr. Schwieger's counsel stated at the oral argument that he has no experience with class actions. Instead, counsel states that he "has experience handling complex federal litigation against multi-billion dollar corporate defendants and the Federal Government." ECF No. 137 at 5 n.2. Mr. Schwieger's counsel states that he has "engaged recognized class action administration and litigation finance firms" (ECF No. 151 at 8) but provides no names or other specifics.

Mr. Schwieger's counsel instead asserts that he has "years of creatively developing and litigating foundational legal issues" working on "novel … legal challenges" for the specific issue in this case, military differential pay. ECF No. 137 at 6-7; *see id.* at 5 (noting "over a decade" of "specific experience and expertise forged" on the "legal contentions … at issue in this case"). In that time, Mr. Schwieger advanced the case through multiple amended complaints to the motion-to-dismiss stage. *See* ECF Nos. 7, 14, 33, 42, 129. In other words, this case is still near its beginning, years in. *See generally Clemente v. Federal Bureau of Investigation*, 166 F. Supp. 3d 11, 15 (D.D.C. 2015) (noting that "it is Plaintiff's responsibility to move [the] case forward"), *aff'd*, 867 F.3d 111 (D.C. Cir. 2017). Mr. Schwieger argues that counsel for *Platero* "made no effort or even hint[ed] at an effort to develop or represent putative claimants prior to" the certified class start date. ECF No. 144 at 5. But counsel for *Platero* promptly moved to certify a class for the group of potential plaintiffs most likely to be entitled to relief. *Platero*, No. 25-782, ECF No. 35.

More importantly, the issue at the heart of this case is not a complicated legal question of entitlement to differential pay. That primary legal question has already been resolved by the Supreme Court in *Feliciano*. The complicated questions here relate to volume, including how to notify and calculate damages for a class containing, potentially, tens of thousands of members, from

many military branches and many federal agencies, with different periods of active-duty service. *Feliciano*, 605 U.S. at 41 ("Tens of thousands of federal civilian employees serve the Nation as military reservists."). It is not clear from either the record or the motion to appoint interim class counsel that Mr. Schwieger's counsel has the resources to manage the complexity of a class action. *Cf. Platero*, No. 25-782, ECF No. 33 at 2 (noting that counsel for *Platero* were already "building a website for potential plaintiffs, identifying potential plaintiffs, developing their claims, and committing a team … to the case").

Independently of the four factors under RCFC 23(g)(1)(A), Mr. Schwieger points out that his case was first in time and could therefore allow class members to receive damages for a longer period than *Platero*. ECF No. 144 at 2, 4. But in addition to the factors already discussed counseling against naming Mr. Schwieger's counsel as interim class counsel, it is not clear that Mr. Schwieger's potential start date is any earlier, when he dropped his class claims and then resurrected them only in 2025 or 2026 (*supra* part II.A.2.c), and the class action may be considered to have commenced only after a court ruling on class certification. *See Big Oak Farms*, 141 Fed. Cl. at 493 (explaining that the statute of limitations is not tolled until after a court ruling on class certification).

To the extent that certain plaintiffs might be losing out on viable claims that extend before May 6, 2019, those plaintiffs could have filed their own suits earlier, as Mr. Schwieger did. And Mr. Schwieger's entitlement to three years and fourteen days of SCRA tolling does not self-evidently affect other potential plaintiffs' entitlement to SCRA tolling. Thus, any class action based on Mr. Schwieger's filing date would not automatically include that same amount of tolling.

Notably, though, the failure of the class action does not affect the rights of Mr. Schwieger himself. In bringing his own claim, independent of a class action, the government has already

informed Mr. Schwieger that he "is due reservist differential pay under 5 U.S.C. § 5538(a) for his deployment to Afghanistan from August 10, 2018 to September 13, 2019" in the amount of $6,992.73, "not including interest." ECF No. 110 at 1. In other words, neither this court nor the government intends to cut off Mr. Schwieger's independent claim that reaches earlier than *Platero's* general start date of May 6, 2019.

In sum, even though Mr. Schwieger's suit was initiated before *Platero*, Mr. Schwieger's counsel has not shown that he can fairly and adequately represent the interests of the class.

**C. *Schwieger* and *Platero* will not be consolidated**

Evidently recognizing that designating a separate class would cause confusion, Mr. Schwieger, in his reply in support of his motion to designate interim class counsel, included a separate motion to consolidate this case with *Platero*. ECF No. 151. He argues that "[a]t this stage of litigation … consolidation of the cases is the best path forward for class members." *Id.* at 2. He presents two arguments for consolidation: that both cases share a "common question of law or fact" and that consolidation is in the "interest of judicial economy." *Id.* at 3 (quoting *AT&T Corp. v. United States*, 69 Fed. Cl. 547, 548 (2006)).

In deciding whether to consolidate two cases under RCFC 42(a), the court asks first whether the "cases present a common question of law or fact" and if so, second, "whether the interests of judicial economy outweigh the potential for delay, confusion and prejudice that may result from consolidation." *Lowry Economic Redevelopment Authority v. United States*, 71 Fed. Cl. 549, 553 (2006) (quotation marks omitted).

It is true that the two cases share a common question of law or fact. But, as highlighted by the earlier analysis of the motion to designate interim class counsel, consolidation would also work against the interests of judicial economy, instead contributing to "delay, confusion, and prejudice." *AT&T*, 69 Fed. Cl. at 548; *Lowry*, 71 Fed. Cl. at 553. Consolidation could also cause undue delay

in *Platero*, which would ultimately hurt the interests of all service members who choose to opt into that class. Mr. Schwieger's 2018-19 mobilization is timely at least in part for a reason—SCRA tolling—that applies differently to each of the *Platero* plaintiffs. *See id.* And, unlike the *Platero* plaintiffs, the parties in *Schwieger* have already begun to calculate the total damages Mr. Schwieger is owed, meaning his case is closer to resolution. While Mr. Schwieger could join the *Platero* class, he has already paid a separate filing fee and is close to determining damages, likely undermining any benefit to him. The purpose of a class action is to better support the interests of similarly situated plaintiffs. Granting the motion to consolidate would undermine that goal. Thus, the court will also deny Mr. Schwieger's motion to consolidate.

## III. Conclusion

For the reasons stated above, this court **grants** the government's motion to dismiss the differential pay claim for Mr. Schwieger's 2009-10 mobilization (ECF No. 138). The court **denies** Mr. Schwieger's motion to designate interim class counsel (ECF No. 137). And the court **denies** Mr. Schwieger's motion to consolidate his case with *Platero* (ECF No. 151).

Within fourteen days of the date of this decision, the parties **shall file** a joint status report proposing next steps in this case. The joint status report shall also include a statement that the parties have discussed settlement in person, by phone, or by videoconference within the past week.

**IT IS SO ORDERED.**

/s/ Molly R. Silfen
MOLLY R. SILFEN
Judge